IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1-04-1297-T |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REVERSING COMMISSIONER'S DECISION

Plaintiff, Debra Bell, filed this action to obtain judicial review of the Defendant Commissioner's final decision terminating her disability insurance and supplemental security income benefits, awarded on the basis of disability under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The Commissioner states that an earlier decision of the Social Security Administration ("SSA") found plaintiff disabled, due to injuries sustained in a car accident, beginning on October 28, 1994.

On January 27, 2003, following a continuing disability review, SSA notified Plaintiff that her disability had ceased because her condition had improved. Plaintiff timely requested a hearing before an administrative law judge (ALJ), which was held on April 28, 2004. On July 10, 2004, the ALJ issued a decision finding that Plaintiff's disability ceased as of March of 2002, due to medical improvement related to her ability to perform substantial gainful

activity. The Appeals Council denied Plaintiff's request for review on October 1, 2004. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed her complaint for review in this court on November 10, 2004, seeking reversal of the Commissioner's decision on the grounds that it is not supported by substantial evidence in the record. For the following reasons, the Commissioner's decision to terminate Plaintiff's benefits is REVERSED.

## Standard of Review

Judicial review in this Court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405 (g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Id. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip v. Secretary of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286).

Facts

Plaintiff was injured in a car accident on October 28, 1994. Plaintiff's injuries included a broken right humeral tuberosity and multiple facial fractures. Tr. at 118. She underwent surgery and, upon discharge from the hospital, was diagnosed with zygomaticomaxillary fracture, right comminuted; orbital floor blow out fracture, right; and mandibular condyle fracture, right. Tr. at 118-19.

In November of 1994, Plaintiff was seen by Dr. Lents for a follow-up examination. Dr. Lents diagnosed ocular contusion and stable status post blowout fracture repair. Tr. at 119. Since November of 1994, Plaintiff was seen by Dr. Randy Fly on a regular basis. Plaintiff complained to Dr. Fly of shoulder pain and stiffness on numerous occasions. Tr. at 119. In August of 1995, Dr. Fly opined that Plaintiff was capable of lifting no more than ten to fifteen pounds and could not perform any overhead work or repetitive lifting above the shoulder level. Tr. at 119. Dr. Fly also opined that Plaintiff had a nine percent impairment of loss of range of motion and imposed restrictions based on his findings. Tr. at 119.

In August of 1996, Plaintiff was seen by Dr. Barney L. Freeman. Plaintiff complained of pain in the right shoulder. Tr. at 119. Dr. Freeman observed tenderness to palpation about Plaintiff's shoulder and a marked positive impingement test. Tr. at 119. Plaintiff's shoulder could not be examined for instability because of pain and guarding. Tr. at 119. Dr. Freeman diagnosed chronic pain in the right shoulder secondary to the motor

vehicle accident and opined that her condition was likely to be permanent. Tr. at 1119. In addition, Dr. Freeman's notes indicated that he agreed with the limitations and restrictions as assessed by Dr. Fly. Tr. at 119.

In December of 1996, Plaintiff was seen by Dr. Karl E. Misulis of the Semmes-Murphy Neurological & Spine Institute in Humboldt, Tennessee, for a consultative examination. Dr. Misulis noted that Plaintiff had obvious changes and decreased movement of the right side of the mouth, muscle spasm of the cervical paraspinals and trapezius on the right side, difficulty upon elevation of the right arm, marked limitation of even passive motion around the shoulder joint, and neuropathic pain radiating to the right arm. Tr. at 119. Dr. Misulis opined that Plaintiff was capable of lifting/carrying no more than ten pounds, that she was not capable of climbing or balancing, and that she had affected ability to reach, handle, feel, push or pull. Tr. at 119.

At Plaintiff's hearing before ALJ Hubert E. Graves on September 26, 1996, she testified that she was in constant pain and that she was unable to work because of constant pain. Tr. at 120. Specifically, she stated that she was able to lift the weight of a milk jar, sit for forty-five minutes, and stand for two to three hours. Tr. at 120. Plaintiff also stated that she was only able to write for approximately ten minutes before her arm starts shaking. Further, she stated that sitting exacerbated her shoulder pain. Tr. at 120. On these facts, ALJ Graves determined that Plaintiff was disabled as of October 28, 1994.

After she was determined to be disabled, Plaintiff was seen by Dr. Jackie Taylor at

4

Northside Medical Clinic in Jackson, Tennessee, on numerous occasions. On April 4, 1997, June 11, 1998, December 1, 1999, June 3, 1999, April 12, 1999, June 1, 2000, and December 13, 2001, Plaintiff complained of pain in her right shoulder. Tr. at 142, 143, 145, 146, 148, 150, 151-52. Her visit on June 11, 1998 was prompted because of Plaintiff's attempt to lift furniture over the weekend. Tr. at 148. Dr. Taylor noted that Plaintiff's shoulder was tender and that she had decreased range of motion during her April 4, 1997, June 11, 1998, April 12, 1999, and December 1, 1999 visits. Tr. at 142, 146, 148, 150. Plaintiff's neurological examinations were intact, however, during these visits. Tr. at 142, 146, 148, 150. In addition, Dr. Taylor stated that Plaintiff was doing "well" and "better" after being placed on the medication Oxycontin. Tr. at 142, 146.

Dr. Lee M. Carter took over as Plaintiff's primary care physician from 2002 until 2004. Plaintiff complained of chronic pain in the right shoulder and arm on multiple office visits. Tr. at 179, 180, 183, 186, 187, 188, 190, 192, 193, 194, 196, 197, 200, 204, 206, 207, 209, 211, 216, 217. Dr. Carter documented an initial decrease in range of motion in her right arm and no acute changes thereafter. Tr. at 217. On August 14, 2002, and February 6, 2003, Dr. Carter noted that Plaintiff's right shoulder pain was "stable." Tr. at 204, 216. On May 6, 2003, Dr. Carter opined that "[t]he right shoulder pain is doing ok with worsening episodically with weather fronts." Tr. at 197. Plaintiff's last visit to Dr. Carter's office was on April 27, 2004. As a result of that visit, Dr. Carter stated that Plaintiff's pain was "still in poor control overall." Tr. at 178.

On March 19, 2002, Dr. Donita Keown performed a consultative examination on Plainfiff. Plaintiff complained of facial deformities, neck pain, chronic shoulder pain, and numbness of the right hand and right leg. Tr. at 162. Dr. Keown's opinions were based solely on conversations with Plaintiff and her examination of Plaintiff. Tr. at 162. Dr. Keown did not have access to notes from Plaintiff's treating physician or any notes related to her medical history. Tr. at 162.

After examining Plaintiff, Dr. Keown opined that she had no positive impingement sign, and that her range of motion on the right shoulder on forward elevation was to 150 degrees, abduction was to 100 degrees, and rotation was to 90 degrees. Tr. at 164. Dr. Keown further opined that Plaintiff showed no clear evidence of loss of motor strength in her right arm or hand and that she had no evidence of impairment due to a previous facial reconstructive surgery. Tr. at 165. Further, Dr. Keown opined that Plaintiff could sit, stand or walk at least six hours in an eight-hour day and that she could routinely lift ten to fifteen pounds and occasionally lift twenty-five to thirty pounds. Tr. at 165. However, Dr. Keown noted weakness on the lower right eyelid, atrophic changes in the muscles of the right orbit, decreased range of motion, and pain on manipulation of the right shoulder. Tr. at 163-64. Dr. Keown also noted that Plaintiff's effort on examination was less than ideal and that she gave poor effort on motor strength examination with her right arm. Tr. at 163-64.

On March 20, 2003, Plaintiff was seen by Dr. Misulis for right arm weakness. Dr. Misulis noted that she had sharp pain going down her elbow to the back of her neck, that she

6

was having difficulty with her right hip, that she had decreased sensory function on her arm, that she had lost feeling in multiple fingers on her right hand, and that she possibly had a slight antalgic component to her gait. Tr. at 223. Dr. Misulis also noted that Plaintiff's "strength is characterized by decreased effort rather than frank paralysis." Tr. at 223. An electrodiagnostic test performed by Dr. Misulis showed no signs of nerve damage in Plaintiff's arm. Tr. at 219-20. However, on March 11, 2004, Dr. Misulis stated that "[w]hen she needs forms filled out for disability I will be happy to do so, since she is really not improved to the point where she is able to do everything she needs to do." Tr. at 225.

On April 28, 2204, Plaintiff testified at an administrative hearing before ALJ John J. Schule III. Plaintiff testified that she suffered from nerve damage in her arm and face and pain in her shoulder, neck, and under her arm. Tr. 246, 247, 248. Plaintiff stated that she could not work without taking powerful pain medications, but that the pain medications prevented her from being able to work. Tr. at 248-50. Plaintiff also stated that no one will hire her because of all the restrictions imposed on her by her doctor as a result of the accident. Tr. at 243.

On July 10, 2004, the ALJ determined that Plaintiff was not disabled. In particular ALJ Schule found that: (1) Plaintiff was disabled within the meaning of the SSA on March 24, 1997 with an October 28, 1994 onset date, and that she has not engaged in substantial gainful activity since that date; (2) medical evidence establishes that Plaintiff currently has chronic pain in the right upper extremity with mild degenerative disc disease of the cervical

spine; (3) the medical evidence establishes that Plaintiff does not have an impairment or combination of impairments which meets or equals the severity of impairments listed in Appendix 1, Subpart P, Regulations No. 4; (4) the impairments present as of March 24, 1997, the time of the most favorable medical decision that Plaintiff was disabled, were right facial deformity and chronic pain of the right shoulder; (5) the medical evidence establishes that there has been improvement in Plaintiff's medical impairments since March 24, 1997; (6) this medical improvement is related to Plaintiff's ability to work; (7) the medical evidence establishes that Plaintiff currently has an impairment or combination of impairments which is severe; (8) Plaintiff's testimony and allegations are not fully credible; (9) Plaintiff has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently; she can sit, stand, or walk for six hours, and she can frequently reach above shoulder level on the right; (10) Plaintiff cannot perform her past relevant work; (11) Plaintiff is a "younger individual" as defined in 20 C.F.R. § 404.1563; (12) Plaintiff has a "limited education" as defined by 20 C.F.R. § 1564; (13) considering the range of work at all levels that Plaintiff is still functionally capable of performing, in combination with her age, education, and work experience, and using Rule 202.18 of the Medical-Vocational Guidelines as a framework for decision-making, Plaintiff is not disabled; and (14) Plaintiff's disability ceased in March of 2002. Tr. at 17-18.

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). Thus, an award of benefits may not be terminated unless the Commissioner finds substantial evidence that there has been medical improvement in the claimant's impairments, and that the claimant is now able to engage in substantial gainful activity. In such termination proceedings, the ultimate burden of proof lies with the Commissioner. Nierzwick v. Comm'r of Soc. Sec., 7 Fed. Appx. 358, 361 (6th Cir. 2001).

The determination of whether a claimant remains disabled is made according to a sequential analysis, as set forth in 20 C.F.R. § 404.1594 and § 416.994. However, in this case, the primary issue to be considered is whether there has been any medical improvement in Plaintiff's condition. Medical improvement is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

§ 416.994(b)(1)(i). If there has been medical improvement, it must then be determined whether that improvement relates to the claimant's ability to do work, as demonstrated by an increase in residual functional capacity. § 416.994(b)(1)(ii)-(iii).

In the present case, the ALJ's determination that Plaintiff's medical condition has improved was based on Dr. Keown's findings, rather than those of her treating physicians,

9

and by discrediting her subjective complaints of pain. Plaintiff argues that the ALJ's decision is contrary to law and that Commissioner has not met its burden.

### 1. Treating Physician Rule

The opinion of a treating physician must be given great weight when it is supported by sufficient medical evidence. See 20 C.F.R. § 404.1527(d)(2). Under the treating physician rule, opinions of physicians who have treated the plaintiff receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." Id. The ALJ may reject opinions that are not supported by the medical findings and resolve conflicts in the evidence. See Walters, 127 F.3d at 529-30 ; Cutlip, 25 F.3d at 286-87; Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993); Cohen v. Secretary of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992); Young v. Secretary of Health and Human Serv., 925 F.2d 146, 151 (6th Cir. 1990); Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988); Hardaway v. Secretary of Health & Human Servs., 823 F.2d 922, 927 (6th Cir.1987). If the adjudicator finds that a treating physicians' conclusion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the medical record, he is required to apply the following factors in determining how much weight to give a treating physician: "the length of the treatment relationship and frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion with the record as a whole, and the specialization

of the treating source...." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added).

In the present case, the ALJ found that the opinions of Plaintiff's treating physicians, Drs. Taylor, Carter, and Misulis, were not supported by medical evidence in the record. Drs. Taylor, Carter, and Misulis all submitted medical evidence and assessments which indicated that Plaintiff was only capable of less than the full range of sedentary work. First, the ALJ noted that Dr. Taylor observed that Plaintiff was doing "well" or "better" on two occasions in 1999 and that Dr. Carter stated that Plaintiff's condition was "stable" in 2002. The ALJ failed to mention, however, that Dr. Taylor stated that Plaintiff was doing better only after taking Oxycontin and that Dr. Carter's opinion that Plaintiff was "stable" was followed four months later by an observation that she had some decreased range of motion in her right arm. Dr. Carter had also noted that Plaintiff was not pain free, was only able to maintain fair to moderate function on her medication, and that her shoulder was "doing ok" but worsened when the weather changed. Thus, Drs. Taylor's and Carter's notes that Plaintiff was doing "well," "better," or "stable," when taken in context, do not undermine their opinions that Plaintiff is disabled.

Next, the ALJ dismissed Dr. Misulis' opinion that Plaintiff was disabled because an electrodiagnostic test did not establish that Plaintiff had suffered nerve damage in her arm. He also found fault in Dr. Misulis' conclusion because he had not ordered further testing of Plaintiff's condition. Plaintiff argues that further testing was not ordered because her

11

disability benefits had been terminated and she was unable to afford any additional testing or substantial treatment. In addition--given the length and volume of Plaintiff's medical records, the number of times that Dr. Misulis treated Plaintiff from 1996 until 2004, and Dr. Misulis' specialty in neurology--the absence of conclusive evidence of nerve damage from one test does not warrant discrediting Dr. Misulis' opinion that Plaintiff is disabled.

Because the opinions of Drs. Taylor, Carter, and Misulis are well-supported by medically and acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record, the ALJ should have given Plaintiff's treating physicians' opinions controlling weight. As such, the ALJ should have found that Plaintiff was only capable of less than the full range of sedentary work.

Even if the ALJ found that Plaintiff's treating physicians' opinions were not well-supported by the medical record or were inconsistent with other substantial evidence on the record, he must still consider the aforementioned factors when deciding how much weight to give the opinion of Dr. Keown, a consultative physician. The ALJ's reliance on Dr. Keown's opinion overlooks the fact that Dr. Keown did not have access to Plaintiff's medical record. Her notes stated that "there are no notes enclosed from her treating physician or any notes about her medical history for review today." Tr. 162, 165. Thus, Dr. Keown's findings were based solely on a one-time examination of Plaintiff. If Dr. Keown was able to review Plaintiff's medical records when taking into account her subjective complaints of pain, Dr. Keown could have reached a different conclusion. As such, the ALJ

erred by giving Dr. Keown's opinion controlling weight.

### 2. Plaintiff's Subjective Complaints of Pain

Plaintiff also maintains that the ALJ failed to properly credit her subjective complaints of pain. At her hearing with the ALJ, Plaintiff testified that she suffers from nerve damage in her arm and face and pain in her shoulder, neck, and under her arm. Plaintiff stated that she could not work without taking powerful pain medications, but that the pain medications prevented her from being able to work. Plaintiff also stated that no one will hire her because of all the restrictions imposed on her by her doctor. The ALJ found Plaintiff's testimony and allegations not to be fully credible.

The court must evaluate the ALJ's findings with regard to pain in light of applicable case law and Social Security Ruling ("SSR") 88-13. SSR 88-13 requires more than mere allegations of pain. The objective medical evidence must confirm an underlying impairment and the severity of the alleged symptoms, or establish that the impairment is of a severity that could reasonably give rise to the alleged symptoms. See Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 230 (6th Cir. 1990); Duncan v. Secretary of Health and Human Serv., 801 F.2d 847, 852-54 (6th Cir. 1986). In addition, when a claimant alleges fully disabling pain, the "ALJ may distrust [the] claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1182-83 (6th Cir. 1990).

In discrediting Plaintiff's subjective complaints of pain, the ALJ found her not to be

13

credible because Dr. Keown noted that her effort on examination was less than ideal and Dr. Misulis stated that her effort decreased on physical examination. However, the ALJ determined that the medical evidence in the record supported Plaintiff's claim that she suffers from chronic pain in the right upper extremity and mild degenerative disc disease of the cervical spine. While these impairments did not meet or equal the severity of impairments listed in Appendix 1, Subpart P, Regulation No. 4, the ALJ did conclude that her impairments were "severe." Tr. at 18.

When taking into account the nature of Plaintiff's injury, the length of time that she has been treated, and the amount of medical evidence supporting her contention that she has disabling pain in her shoulder, arm, face, and neck, there is substantial objective evidence in the record to support Plaintiff's claim. Because the Commissioner has the burden of proof in benefit termination cases, the ALJ erred by discrediting Plaintiff's subjective complaints of pain. Two statements that Plaintiff was not giving full effort, by themselves, are not enough to meet this burden.

## Conclusion

For the foregoing reasons, the Court finds that the ALJ's conclusion that Plaintiff's physical impairments have medically improved is not supported by substantial evidence, and is contrary to law. Therefore, it is unnecessary for the Court to address the ALJ's findings regarding her residual functional capacity. Accordingly, the Commissioner's decision to terminate Plaintiff's benefits is REVERSED with instructions to reinstate those benefits.

The Clerk of Court is directed to prepare a judgment.

IT IS SO ORDERED.

_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

9 May 2005
_____
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 11 in case 1:04-CV-01297 was distributed by fax, mail, or direct printing on May 10, 2005 to the parties listed.

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Mitchell G. Tollison
TOLLISON LAW FIRM
2821 N. Highland Ave.
Ste. A
Jackson, TN 38305

Honorable James Todd
US DISTRICT COURT